Yes, Your Honor. May it please the Court. My name is Russell Petty, representing Ghardan Bouboudjian. With the Court's permission, I'll try to save a couple of minutes for rebuttal. Of course. Your Honor, there isn't any question that Mr. Bouboudjian suffers from a severe heart condition. He had a quad bypass in 2000, a post-surgery echocardiogram shows that he has a reduced, that his heart is basically working. We're familiar. The point, Your Honor, is that in spite of the fact when Hartford came on the case, in spite of the fact that all the evidence in the record, his own statements, his physician, Dr. Lee's statements, the prior determination by CNA, the prior determination by the Social Security Administration, all of this pointed towards Mr. Bouboudjian's disability. This is all helpful to your client, but at the end of the day, he had a trial before a district judge. He and the district judge issued a thorough set of findings of fact and clues of law and seems to have found or did find against your client. He said he didn't carry his burden to show that he continued to be disabled. So the fact that you've got lots of evidence that would have supported a finding going the other way doesn't really help. Why isn't, why is the district judge clearly erroneous in her findings? Well, you know, Your Honor, the most significant problem that we have with what took place here was the fact that Hartford, and it's clear from the record, engaged in an intentional series of actions designed to manufacture evidence that Mr. Bouboudjian was disabled. That's entirely possible, but this is not a case like other cases where the insurance company does this kind of thing and then says, and now we've made a decision, we're entitled to deference. So they go ahead and they sort of skew the record. This is a situation where the district court said, no, you don't get any deference. I'm going to make the findings. And in that case, the insurance company is sort of in the position of being a litigant, just like any other. They've got a contract. They've got money at stake. And so they try to develop evidence that supports their position. You had a chance to do the same. Your client had a chance to do the same. He could have asked Dr. Lee to send a statement. He could have gone to a different doctor and gotten a statement from him. He could have tried to introduce evidence even before the district court to supplement the administrative record. We know the district court allowed him to supplement the administrative record in some respects. He could have put in more. But in the end of the day, this was all presented to the district judge, a very fine district judge, who just ruled against him. I don't know how we can averse that. Well, with respect, Your Honor, first off, Hartford isn't just a normal ‑‑ well, I mean, they're a normal litigant at this particular point. But back when they were deciding this case, in spite of the fact that it's decided under the de novo standard review and there's not a grant of discretionary authority, there's still an erisic fiduciary that has obligations to show some, you know, fiduciary obligations to Mr. Baboujian. I want to get back to what I think is the starkest evidence in the record, Your Honor, and that's Ms. Kelly's. And I know the court has read the briefs, but that's Ms. Kelly's letter of May 17th to Dr. Lee and the way that she manipulated Mr. Baboujian's statement from the month before. It's not that. You know, it's a somewhat slanted excerpt. But, you know, he said all the things that she said, he said. She didn't put in a number of qualifiers. But Dr. Lee could have come back with an answer, could have said, hey, this is not right. He could have done that, right? Well, first off, Your Honor, I mean, you know, it's slanted. I mean, she put in all the things that Mr. Baboujian said that suggested he could work. And left out all the things that he said that suggested that he couldn't work, showed he could not work. The same problem Judge Kuczynski has. It sounds to me like you're trying to relitigate the case. Judge Fischer gave you the benefit of every doubt on the standard of review, on the information you wanted to put in the record. It was remarkably charitable. And all I hear you doing is trying to relitigate the case. The findings of that standard, unless they're clearly erroneous, that's a tremendous burden that you have to get over. There's no treating physician rule, according to Black and Decker in this. Social Security has a totally different approach. So you've got a trial, you've got facts, and you've got findings. Well, look, I appreciate that, Your Honor. Let me deal then with four issues that I think that Judge Fischer simply either, you know, didn't address in her order, or else the clearly erroneous standard does not apply. First off, there's the Social Security determination, the manner in which that's supposed to prior determination by Social Security. Are you saying that's binding? I mean, she dealt with that and said it's not. I'm not saying it's binding, Your Honor. What I'm saying is, according to the Glenn case, a recent announcement by the United States Supreme Court, when you've got a situation where an insurance company directs someone to apply for Social Security, they do so. Social Security is granted. Then the insurance company comes along and takes the, you know, the proceeds as an offset. Judge Posner in the Seventh Circuit said that while it's not quite collateral estoppel, there is, you know, you have to pay attention to that and you can't simply disregard it. Glenn accepted that reasoning, so it's binding right here. Judge Fischer followed the old rule that said the insurance company is simply free to disregard it.  What I'm saying is that Judge Fischer, well, first off, Hartford should have had to deal with the fact that it was taking contrary positions, as the Glenn case says, and then Judge Fischer shouldn't have allowed them to get away with simply saying, well, you know, it's irrelevant to our determination now. We're not going to mention it at all, which is precisely what happened. So that's an issue on which there shouldn't be any deference shown because it's an error of law, according to what the Glenn case says is supposed to be done. Was there any evidence to indicate how Social Security had come to its determination or was it simply a flat-out statement, Social Security is so to cite? It appears that no investigation whatsoever was done. Yeah, and that's what she pointed to that also. This is page 20. I'm sorry, 20 of your excerpts, page 18 to 19 of the district judge's opinion. She discusses SSA determination. I mean, I must say, I'm not sure that I would have come to the same finding as a district judge, but that's not our job. Another point, Your Honor, if I can sort of deal with the issues, is the failure of Judge Fischer to deal with the issue of a future harm to Mr. Babuji. And the rationale she apparently took. You mean the sudden death issue? The sudden death issue, yes, Your Honor. She says, I don't know what that is, and nobody's ever explained it to me, and everybody's in danger of sudden death. I mean, people who have pacemakers are in danger of sudden death. Vice President Cheney had his first heart attack at 37 years old before he even ran for Congress, and he's in danger of sudden death. She says, I just don't know how that relates to this case. Nobody ever came in and said, sudden death in the instance of this man indicates that he can't do any job at all, because any job at all will cause him to have some kind of stress and die. Well, yeah, I mean, the Court's correct. I mean, I could walk outside the courtroom and get hit by a mediator. She says everybody's just waving sudden death around like a flag, and nobody's explaining how it relates to this case. Well, when someone's long-term treating cardiologist says that stress exasperates a particular gentleman's problem and that he is in danger of sudden death because of his severely damaged heart, it's not a statement to be taken that, you know, well, okay, well, we're all, you know, I mean, you know, things can happen to us all the time. The fact is, is that the rationale employed by the district court was that, you know, he's not in coronary arrest right now, he can work right now, and simply not even going to consider the possibility that the, you know, doesn't have any obligation to consider the possibility that maybe his, the condition is going to damage his heart. So that's not a statement that you would make to the district court that she's not going to consider. I mean, you know, she wasn't tied to anything, but she considered all the improvement that the record showed, and Judge Kaczynski's right, you know, another judge might have come to a different conclusion. But the standard of review is quite deferential unless you can show us some real legal errors that she made that caused her decision to be subject of being disregarded. The mental disorder issue, Your Honor. And I realize that the court has read the briefs. You know, Mr. Boubou has a claim that as well as his ordinary condition, he's also got a mental disorder. Right. He's focused on his problem, and it's distracting him from everything else. And, you know, I read Judge Fisher's order carefully, and I miss stuff all the time, but I didn't see anywhere where she said, well, I don't think that he's disabled, or I rule that he's not disabled from a mental condition. Instead, what she says is, and it's, and I, basically she says, I don't think mental disorders are covered by, not basically, what she says precisely, I don't think mental disorders are covered by the policy. They clearly are, and so it's simply a ruling against Mr. Boubou on a crucial point. I'm just, it's a simple error of law, a simple misreading of the policy. Yeah. Quote her words that you're, now you've hooked onto something that she misread the policy. All right. Your Honor, the, if the court will give me just one second. You quoted her saying, I don't believe that the policy covers psychiatric or mental disabilities at all. It's page 18 in the record, footnote 12. Page 13 of the order itself, I believe. Well, what she says is Plaintiff does not argue that he is disabled by a somatoform or other mental disorder, and the plaintiff does not seem to include such a disorder in the meaning of total disability. And she cites A.R. 378. Which part of that footnote are you disagreeing with? The fact that the plan does not seem to include such a disorder, i.e., somatoform or other mental disorder. How about the first part of the sentence, where it says, Plaintiff does not argue that he is disabled by a somatoform or other mental disorder. Do you agree with that part? No, of course not, Your Honor. And I've got this in my brief. We argued strenuously in the course of briefing this matter that Mr. Babushian was in fact disabled by a mental disorder. His disability by a mental disorder is supported by his treating psychologist, Dr. Milgram. And, you know, I mean, he just is. I mean, we just made that argument below in front of Judge Fisher. The record is clear on that point. And, you know, again, I can't, you know, you hate to point to this. And it's not a very clear, it's only a footnote. But I can't find any place else in the order where Judge Fisher, you know, clearly says, Well, the reason why I'm ruling against Mr. Babushian on his mental disability claim is because I don't think that he's mentally disabled. I don't think he's made his burden to show that. I can't find any place in the order where it says that, Your Honor. If I could. What about the sentence to which that footnote hangs in the text where the judge seems to discuss somatoform disorder? In any case, when a somatoform disorder occurs, the measure of functional restriction is generally placed by the physical medical physician, as he or she is in a better position to estimate intensity of symptoms as they affect function. In essence, Dr. Lurie opined that in such a case, a psychiatric expert should defer to the medical expert. Well, I mean, those are all, you know, those are all things that Dr. Lurie said, but there's nothing in there that says, and we don't, by the way, we're not contending that Mr. Babushian has a somatoform disorder. We believe he suffers from depression related to his, but the fact is, those are all things that Dr. Lurie said. But, you know, we would expect to see, and we think that Dr. Lurie is right, because Dr. Milgram says other things that are quoted in the order that, you know, Judge Fisher doesn't say, well, we agree with that as well. Okay. Thank you. Thank you, Your Honor. Good morning. My name is Edith Shea, and I will present the appellees. Your Honor, in this case, this case arises from an ERISA action where the appellant. You know, we really do know. We know the case. We really do know the case, and I don't even want to wind up to sort of get into it. I want to start by answering the question we're just discussing with the opposing counsel, and that is whether or not Judge Fisher erred in failing to take account of the possible disability based on mental disorder. Your Honor, I respectfully submit that she did not. If you focus on page 18 in the record, which is 13 of her findings of fact, there's two points. First, she does note that Mr. Gabugian hadn't made a claim of total disability due to depression. The way that the issue of mental health came into the picture was because during his appeal, he said, by the way, for more medical information, see my psychiatrist in addition to my cardiologist. Is that Milgram? That was Dr. Milgram. And what Hartford did at that point was to go to the psychiatrist and say, please give us your records and please fill out this form. What the psychiatrist did at that point was to essentially fill out the form saying, not applicable, not applicable, not applicable, throughout the entire form, and then put in one sentence supporting a disability. And Judge Fisher specifically considered that during oral argument, and in essence said she was not impressed with the ---- You know, I get worried whenever anybody says in essence, because that's not what she said. She said something else and you're paraphrasing it. And paraphrasing frequently distorts what happened. Your Honor, and I can point you to the specific note in the record. And that's at 463 of the record. You're now looking at the excerpts of the record? At the excerpts of the record, yes. And this is volume 3, and the numbers at the bottom close to the end of the book, right? Yes, yes, Your Honor. 463, which has a number 34 at the top, right? Number 34 at the top, yes. Okay. And what line are you pointing to? I'm looking, starting at line 9. Right. I'm with you. Where she says, and then the other thing that sort of struck me is Milgram, the psychiatrist. And she quotes him as saying, this patient can't do anything, can't do any occupation in the national economy. Lawyer's language, if ever I heard it. What expertise does this man have in all of the occupations in the national economy? It was almost like, how dare you question my conclusion? I'm telling you, no job in the national economy can this man do. So Judge Fisher specifically addressed Dr. Milgram's opinion. And then in her findings of fact, she specifically refers to what ended up happening, which was that Hartford not only went out and obtained the records, not only went out and obtained the form, but then went and obtained a review by a board-certified psychiatrist, Dr. Lurie. Lurie. And Judge Fisher makes reference to that all in this page here, which is 18 in the record. And she notes that Dr. Lurie made this analysis, that Dr. Lurie found that while there was some evidence of some depression and some treatment for that, there was, he essentially said, and I'm sorry to use that word again. Dangerous word. I'll actually refer specifically to Dr. Lurie's report, and that's on 97 of the administrative record. And there Dr. Lurie says at the end of his report, in answer to specific questions, number one, there is no credible evidence for any functional psychological limitations as of August 28, 2005 and beyond, apart from his somatoform disorder. And then what he goes on to say is when you're dealing with a patient with a somatoform disorder, what a psychiatrist does is then refers to the doctor who's treating the underlying physical condition to say, or the doctors who are evaluating the underlying physical condition to say, what is the nature of this? Kennedy. Did Judge Fisher get it wrong in the second part, in footnote 12? I don't think so, Your Honor. The way that I read that line is to say that Mr. Baboujian wasn't claiming that he was totally disabled from somatoform disorder or any other mental disorder. And from my reading of it, and it's not exactly clear, but from my reading of it, what she's saying is that it's not clear whether this somatoform disorder, which would affect the subjective view of a patient with respect to what duties they could do or not, would be something that would amount to total disability. But that was a footnote and an aside which does not take away from the fact that Dr. Fisher noted specifically that a board-certified psychiatrist... Judge Fisher or Dr. Lurie? Pardon me. Judge Fisher. I wasn't making fun of you. I just wanted to make sure I knew who you were referring to. Yes, I was. You were referring to Judge Fisher. Judge Fisher. Not Dr. Lurie, because we're talking about both. Right. What I'm referring to... Go ahead. Okay. What I'm referring to... What you're saying is that Judge Fisher adopted, in her opinion, at page 13 of her opinion, the specific finding by Dr. Lurie. Dr. Lurie. Yes. And she specifically weighed... Let me ask you a somewhat different question. The whole idea of... This claimant was first declared disabled based on his heart condition. And when the review was first made by Ms. Kelly... Ms. Kelly? Yes. It was all a question of his heart condition. Then somewhere in the appeals process, he puts in this thing about the psychiatrist. Does he have to make a separate claim? If he claims, let's say... I mean, let's just make... Let's say in the middle of the process, he gets run over by a truck. Or he has some other disability. Does that... Does he have to make a separate claim for that? Is raising it in the middle of the appeals process sufficient? An argument could be made that he would have to make a separate claim. Would it be covered if it arose while he is on drawn disability? Would it be covered? Or does this have to have been something that happened at the time he was paying premiums? Well, it would have had to be something... I think a very strong argument could be made that, technically, Hartford did not have to consider the psychiatric basis that was raised for the first time on appeal. Because under the ERISA regulations, what Hartford was doing during the appeal process was simply looking back at that initial decision to see whether that decision should be affirmed or reversed. But what it did in this case is it went a step further and said, okay, let's look at this new evidence of the psychiatry. So having done that, is that now in the case? And the district judge couldn't have just ignored it? I mean, she... I think that the district judge could have said this information about the psychiatrist didn't even need to be considered because the only issue that we're dealing with is whether that claim decision that was made was correct and whether the processes that were followed and the evidence that was reviewed during the appeal with respect to that decision was correct. But what the district court did in this case was to say, well, but in any case, this issue was also reviewed. And she weighed the evidence between the two different psychiatrists and even noted that Dr. Lurie, who reviewed the claim, was a board-certified psychiatrist, and she discussed the reports and the specific opinions of those psychiatrists. Okay. Thank you. Thank you. You're out of time, I believe, but we'll give you a minute for rebuttal if you wish to take it. Your Honor, a few very brief comments. First off, Your Honor, with respect to the court's questions about disability and other conditions that arise while benefits are being paid, I couldn't find a policy while we were talking, but these policies are all fairly standard, and the general rule is that a condition that arises while the insurance company is paying benefits under one condition is covered under the policy. In other words, employees' insurance continues in spite of the fact that he's left work as long as the insurance company is paying benefits. Doesn't he have to make a separate claim? I mean, let's say, for example, he's on this condition, and he goes out and he gets run over by a car. Does he have to make a separate claim to the insurance company saying disability based on having been run over by a car? The policy really doesn't say one way or another. I've seen a couple hundred files in my time, and the usual way it happens is you just inform the insurance company you've got this condition, and the insurance company deals with it. Clearly the insurance company can say we want to see a claim form on this, but if they want to see a claim form on this, they should tell the guy. They shouldn't just, you know, take the information and consider it  A couple additional points, Your Honor. First off, on page 18 of the record, it's clear that what's taking place is Judge Fisher is quoting from Dr. Lurie. On page 17 of the record, she quotes from Dr. Milgram. She says at the end of his form, Dr. Milgram will pine that plaintiff is unable to work in any job existing in the national economy. That's not saying that she agrees with Dr. Milgram. She's simply quoting from him. And? Well, the point of the matter is, in page 18, it appears that she's quoting from Dr. Lurie, but there's nothing there that says, oh, and I agree with Dr. Lurie. The only thing in this brief, and I recognize it's just a footnote, Your Honor, and I'm as puzzled by it as everybody else is, but the only place in this order where it appears she's saying something that sounds like a decision with respect to this particular claim is in footnote 12, where she says, well, you know, he's not claiming he's covered by a mental disability When were you first puzzled by it? Pardon me? When were you first puzzled by it? Well, probably You see, you should have gone in and asked for a clarification or reconsideration or something if you were puzzled by it. You know, Do not expect us to be puzzled, too. Again, my apologies, Your Honor, and I guess I could have done a better job handling this, but I mean, I first struck me as when I was preparing the case for appeal is when it first occurred to me that I really couldn't find anything in the opinion in which this matter was decided. Thank you for your time, Your Honor. Thank you. I appreciate it. Okay. This argument stands submitted. We'll next hear argument on the last case on the calendar, Ariana v. Lucene.
judges: Kozinski, Trott, Fisher